UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
THOMAS CONTI,

                Plaintiff,              **MEMORANDUM AND ORDER**
                                                      2:21-CV-00158 (RPK) (AYS)

        v.

ANTHONY COMITO, JASON
McMUNN, and ASHLEIGH TROTTA,

                Defendants.
-----------------------------------------------------x
RACHEL P. KOVNER, United States District Judge:

        Plaintiff Thomas Conti brings this lawsuit under 42 U.S.C. § 1983 for alleged constitutional violations arising out of his arrest on drunk-driving charges. Defendants have moved for summary judgment. For the reasons set forth below, the motion is granted in part and denied in part. Defendants' motion for summary judgment on plaintiff's claims against Sergeant Jason McMunn and Officer Ashleigh Trotta is granted in full. Defendants' motion for summary judgment on plaintiff's claims against Officer Anthony Comito is denied as to the unlawful-seizure claim but granted as to plaintiff's excessive-force claims.

## BACKGROUND

### I. Factual Background

        The following facts are taken from the parties' Rule 56.1 statements and relevant portions of the record and are undisputed unless otherwise noted.

        Plaintiff was driving in the Village of Quogue, New York, at approximately 3:00 a.m. on March 17, 2019, when he was pulled over by police officers and eventually arrested on drunk-driving charges. *See* Defs.' Rule 56.1 Statement ("Defs.' Statement") ¶¶ 13–14, 20 (Dkt. #56-1); Pl.'s Rule 56.1 Counterstatement ("Pl.'s Statement") ¶¶ 13–14, 20 (Dkt. #61-1). Plaintiff later

1

admitted to having consumed various drugs and alcohol earlier that night. Pl.'s Statement ¶ 8.

The parties agree that Officer Comito was one of the officers who pulled over and arrested plaintiff. *See generally* Defs.' Statement; Pl.'s Statement. They also agree that Sergeant McMunn "had no involvement." Defs.' Statement ¶ 59; Pl.'s Statement ¶ 59. But the parties disagree as to Officer Trotta's involvement. *See* Defs.' Statement ¶ 58; Pl.'s Statement ¶ 58.

Defendants allege that Officer Trotta was "present" for the traffic stop "but not otherwise involved." Defs.' Statement ¶ 58. In support of that allegation, they cite Officer Trotta's affidavit, in which she states that it was Officer Comito who pulled over and arrested plaintiff. Decl. of Lauren Turkel ("Turkel Decl.") (Dkt. # 56-2), Ex. K ("Trotta Aff.") ¶¶ 5–14 (Dkt. #56-13). They also cite plaintiff's testimony at an administrative hearing held by the Village of Quogue. *See* Turkel Decl., Ex. D ("50-h Hearing Tr."), 91:10–20 (Dkt. #56-6)); *see also* N.Y. Gen. Mun. Law § 50-h ("Wherever a notice of claim is filed against a . . . village, . . . the village . . . shall have the right to demand an examination of the claimant."). At that hearing, plaintiff testified that he did not recall having any conversations with Officer Trotta on the night of his arrest. *Id.* at 91:10–20. Finally, defendants cite dash-camera footage from Officer Comito's patrol car and Officer Trotta's patrol car. *See* Turkel Decl. Ex. G ("Dash-Camera Footage"). The dash camera from both officers' vehicles began recording automatically after the officers activated the lights on their patrol cars. *See* Turkel Decl., Ex. J ("Comito Aff."), ¶ 4 (Dkt. #56-12); Trotta Aff. ¶ 6. The footage shows that Officer Comito's car was immediately behind plaintiff when plaintiff was pulled over, Dash-Camera Footage, pt. 1, at 0:54, and that Officer Trotta parked her car behind Officer Comito, *id.*, pt. 3, at 0:02. The footage also shows Officer Comito arresting, handcuffing, and leading plaintiff to the patrol car while Officer Trotta stands next to them. *Id.*, pt. 1, at 20:48–21:50.

By contrast, plaintiff alleges that Officer Trotta was "personal[ly] involve[d]" in the traffic

2

stop and arrest. Pl.'s Statement ¶ 58. In support of that allegation, he cites the police report corresponding to his arrest. *See* Turkel Decl., Ex. I ("Police Report") (Dkt. #56-11). One page of the report lists Officer Comito as the "[a]rresting [o]fficer" and Officer Trotta as the "[a]ssisting [o]fficer." *Id.* at 13 (ECF Pagination). Another page refers to Officer Comito and Officer Trotta as "officers involved." *Id.* at 21 (capitalization altered). And yet another page lists both Officer Comito and Officer Trotta as "[a]rresting [o]fficer[s]." *Id.* at 65. In addition, plaintiff describes the dash-camera footage as "depicting [Officer Trotta] providing backup assistance" to Officer Comito. Pl.'s Statement ¶ 58.

The parties dispute whether plaintiff committed a traffic infraction before the car stop. Officer Comito and Officer Trotta allege that they observed plaintiff "visibly cross[] over the double yellow line into oncoming traffic" as he drove past their parked cars. Comito Aff. ¶ 3; *see* Trotta Aff. ¶ 5. Officer Comito then turned on the lights of his patrol car, activating his dash camera, and pulled plaintiff over. Comito Aff. ¶ 3. Officer Trotta pulled up behind Officer Comito and turned on her lights as well, which also activated her dash camera. Trotta Aff. ¶ 7. Though the dash-camera footage did not capture the moment when plaintiff allegedly crossed over the yellow lines, it captured Officer Comito's pulling plaintiff over and conducting a traffic stop. Dash-Camera Footage, pt. 1, at 3:00–15.

Plaintiff, however, "denies committing any traffic violation" before being pulled over. Pl.'s Statement ¶ 38. He observes that the dash-camera footage does not show his car crossing the yellow lines, *see* Dash-Camera Footage, pt. 1, at 0:00–54, though defendants have explained that their cameras did not begin recording until they turned their lights on, *see* Comito Aff. ¶ 4; Trotta Aff. ¶ 6. Plaintiff also submits a declaration maintaining that he "did not cross over and to the left of the double yellow lines." Decl. of Thomas Conti ("Conti Decl.") ¶ 3 (Dkt. #61-2).

3

After pulling plaintiff over, Officer Comito told plaintiff that he had observed him "cross[ing] over the double yellow." Dash-Camera Footage, pt. 1, at 3:00–15. Officer Comito also told plaintiff that he smelled alcohol and administered a breathalyzer test. Defs.' Statement ¶ 17, 43; Pl.'s Statement ¶ 17, 43. Plaintiff was then placed under arrest. Defs.' Statement ¶ 43; Pl.'s Statement ¶ 43.

After he was arrested, plaintiff was placed in handcuffs. *See* Defs.' Statement ¶ 46; Pl.'s Statement ¶ 46. Plaintiff alleges that he "made multiple complaints to [Officers] Comito and Trotta that his handcuffs were excessively tight" and "causing his fingers to go numb." Pl.'s Statement ¶ 46. Plaintiff cites his testimony from the administrative hearing, wherein he states that "[t]he handcuff on the left wrist was put on tight around a previous injury" and that he made "three" complaints to officers about the handcuffs. 50-h Hearing Tr. 42:10–20. He further specifies that he made those complaints while standing "[o]utside where [he] got pulled over." *Id.* 42:24–25. Defendants dispute that plaintiff complained about the tightness of his handcuffs. Defs.' Statement ¶ 46. They cite the dash-camera footage, in which plaintiff does not make any complaints about the tightness of his handcuffs. *See generally* Dash-Camera Footage.

Plaintiff alleges that, while he was handcuffed, Officer Comito "light[ly] push[ed]" his head" into the police car "at an angle," 50-h Hearing Tr. 46:07–08, 47:16, though plaintiff's placement into the patrol car is not visible from the dash-camera footage due to the camera positioning, *see* Dash-Camera Footage, pt. 1, at 21:39–23:05. For their part, defendants allege that Officer Comito "carefully plac[ed] plaintiff" into the patrol car. Comito Aff. ¶ 13.[1]

---

[1] Plaintiff also alleges in his Rule 56.1 Statement that Officer Comito tripped him while leading him to the patrol car, Pl.'s Statement ¶ 47, though defendants deny that allegation, Defs.' Statement ¶ 47. Nevertheless, plaintiff's complaint alleges only that officers used excessive force by (i) "affix[ing] metal handcuffs to his wrists in an excessively tight fashion, despite" plaintiff's complaints "of a prior injury to his left wrist and arm," Second Am. Compl. ("SAC") ¶ 22 (Dkt. #27), and (ii) "violently str[iking] and shov[ing]" him, *id.* ¶ 20. Because plaintiff did not

4

After Officer Comito placed plaintiff in the back of the patrol car, Officer Trotta left the area and "had no further direct interactions" with plaintiff. Defs.' Statement ¶ 48; Pl.'s Statement ¶ 48. Officer Comito drove plaintiff to the police station, Defs.' Statement ¶¶ 50–52; Pl.'s Statement ¶¶ 50–52, where plaintiff was arraigned and then released, Defs.' Statement ¶ 54; Pl.'s Statement ¶ 54. Plaintiff ultimately pleaded guilty to violating New York Vehicle and Traffic Law Section 1192.2 by driving with a blood alcohol level above .08 percent. Defs.' Statement ¶ 1; Pl.s' Statement ¶ 1.

## II. Procedural Background

Plaintiff filed this lawsuit under 42 U.S.C. § 1983 against Officer Comito, Officer Trotta, and Sergeant McMunn. After I granted defendants' motion to dismiss certain claims, defendants moved for summary judgment on plaintiff's remaining claims—specifically, (i) unlawful-seizure relating to the initial traffic stop, (ii) excessive force, and (iii) failure to intervene. *See generally* Defs.' Mem. of L. in Supp. of Mot. for Summ. J. ("Defs.' MSJ") (Dkt. #56). In response, plaintiff consents to the dismissal of all claims against Sergeant McMunn but opposes summary judgment on his claims against Officer Comito and Officer Trotta. *See generally* Pl.'s Mem. of L. in Opp'n to Defs.' MSJ ("Pl.'s Opp'n") (Dkt. #61); *see also id.* at 6.

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR*

---

allege that officers tripped him in his complaint, I do not consider that allegation in resolving defendants' motion for summary judgment. *See Mosby v. Bd. of Educ. City of Norwalk*, 754 F. App'x 34, 37 (2d Cir. 2018) (holding that a district court "properly refused to entertain" claims that a plaintiff "first raised . . . in his opposition to the [defendant's] motion for summary judgment").

5

*Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). "A fact is material if it might affect the outcome of the suit under the governing law." *Ibid.* The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether there is a genuine issue of material fact, I evaluate the whole record, resolving all ambiguities and drawing all permissible factual inferences in favor of the non-movant. *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010). "It is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quotation marks, alteration, and citation omitted). A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). In other words, "[t]he litigant opposing summary judgment . . . may not rest upon mere conclusory allegations or denials as a vehicle for obtaining a trial." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d. Cir. 1980) (quotation marks and citation omitted).

## DISCUSSION

Defendants' motion for summary judgment is granted in part and denied in part. Defendants' motion for summary judgment on all claims against Sergeant McMunn is granted on consent. Defendants' motion for summary judgment on plaintiff's unlawful-seizure claim is granted as to Officer Trotta but denied as to Officer Comito. But defendants' motion for summary judgment on plaintiff's excessive-force and failure-to-intervene claims is granted in full.

6

I. **Summary Judge Is Granted on Plaintiff's Unlawful-Seizure Claim Against Officer Trotta but Not Officer Comito.**

Officer Trotta is entitled to summary judgment on plaintiff's claim that the traffic stop was an illegal seizure because plaintiff has failed to put forward any evidence that Officer Trotta was personally involved in the assertedly unlawful seizure. But disputes of fact preclude granting summary judgment to Officer Comito. In addition, because plaintiff could be entitled to nominal damages, summary judgment in favor of Officer Comito is not appropriate based on a lack of monetary harm.

A. **There Is No Genuine Dispute That Officer Trotta Was Not Personally Involved in the Traffic Stop.**

Officer Trotta is entitled to summary judgment because plaintiff has not put forward evidence from which a reasonable trier of fact could find that she was personally involved in the alleged unlawful seizure. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001) (citation omitted). Here, the alleged constitutional deprivation is the initial traffic stop. But plaintiff has failed to adduce any evidence that Officer Trotta played a role in the decision to make that stop or that she herself effectuated the stop. Plaintiff points to Officer Trotta's statement that she observed the alleged traffic infraction as well as her appearance in the dash camera footage. *See* Pl.'s Opp'n 15. But while an officer who "order[s] or help[s] others to do the unlawful acts, rather than doing them him- or herself," may be personally involved, *Provost*, 262 F.3d at 155, the evidence plaintiff cites establishes only that Officer Trotta was present for the alleged constitutional deprivation. And courts in this circuit "have rejected the notion that every member of a team of officers is, by default, personally involved" just because they are present on the scene. *Rodriguez v. City of New York*, 291 F. Supp. 3d 396, 410 (S.D.N.Y. 2018) (collecting cases holding that officers who were merely present for

7

arrests were personally involved in alleged false arrests).

Plaintiff nevertheless points to Officer Trotta's designation in the arrest report as an "assisting officer," an "officer[] involved," and an "arresting officer" as evidence of her personal involvement in the traffic stop. Police Report 13, 21, 65 (capitalization altered). He cites cases where courts relied on an officer's filling out of arrest paperwork as evidence of his or her personal involvement. *See Shaheed v. City of New York*, 287 F. Supp. 3d 438, 449 n.6 (S.D.N.Y. 2018); *Arbuckle v. City of New York*, No. 14-CV-10248 (ER), 2016 WL 5793741, at *13 (S.D.N.Y. Sept. 30, 2016); *Marom v. City of New York*, No. 15-CV-2017 (PKC), 2016 WL 916424, at *16 (S.D.N.Y. Mar. 7, 2016). But unlike the officers in those cases, Officer Trotta is merely named in the report, and there is no evidence that she actually filled out the paperwork. *See generally* Police Report. In addition, in each of those cases, the constitutional deprivation alleged was false arrest, and the court relied on the officers' filling out of arrest paperwork in holding that the officers were personally involved in the alleged false arrest. *See Shaeed*, 287 F. Supp. at 449; *Arbuckle*, 2016 WL 5793741, at *13; *Marom*, 2016 WL 916424, at *16. Plaintiff's claim, however, is that the traffic stop was an unlawful seizure. He does not now challenge his arrest on a drunk driving charge. *See* Pl.'s Statement ¶ 1. So while Officer Trotta's designations in the arrest report may indicate her involvement in plaintiff's arrest, those references do not provide evidence of her involvement in the conduct plaintiff is now challenging—that is, the decision to stop plaintiff for a traffic infraction.

Plaintiff has therefore failed to present evidence establishing a genuine dispute over whether Officer Trotta was personally involved in an unlawful seizure. Officer Trotta is accordingly entitled to summary judgment on plaintiff's unlawful-seizure claim against her. *See Matsushita Elec. Indus.*, 475 U.S. at 587 (explaining that, to defeat summary judgment, "the

nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*" (quoting Fed. R. Civ. P. 56(e)).

### B. A Reasonable Jury Could Find that Officer Comito Is Not Entitled to Qualified Immunity.

Disputes of fact preclude granting qualified immunity to Officer Comito on plaintiff's unlawful-seizure claim.

Qualified immunity attaches "when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 580 U.S. 73, 78–79 (2017) (per curiam) (quotation marks and citation omitted). Courts in this circuit "look to Supreme Court and Second Circuit precedent existing at the time of the alleged violation to determine whether the conduct violated a clearly established right." *Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 433 (2d Cir. 2009). It is clearly established that a traffic stop violates the Fourth Amendment unless the officer making the stop has "probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." *United States v. Gomez*, 877 F.3d 76, 86 (2d Cir. 2017) (citation omitted). An officer is entitled to qualified immunity where it is objectively reasonable for him to believe that he had reasonable suspicion or probable cause for the stop. *Taravella v. Town of Wolcott*, 599 F.3d 129, 134 (2d Cir. 2010) ("[T]he qualified immunity defense also protects an official if it was objectively reasonable for him at the time of the challenged action to believe his acts were lawful." (quotation marks and citation omitted)).

Summary judgment based on qualified immunity would be improper here because of disputes of material fact. Officer Comito asserts that he had reasonable suspicion for a traffic stop because he witnessed plaintiff commit a traffic violation by crossing the solid double yellow lines

9

marking his designated lane. *See* Comito Aff. ¶ 3; *see also* N.Y. Veh. & Traff. Law §§ 1126(a), 1128(a) (providing that drivers should not "drive on the left side" of "official markings" and that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane"). But a reasonable jury could find that plaintiff did not cross the yellow lines. For starters, the recorded dash-camera footage did not capture plaintiff's car crossing the yellow lines. *See* Dash-Camera Footage, pt. 1, at 0:00–54. And plaintiff has submitted an affidavit stating that he never committed any traffic violations that day. Conti Decl. ¶ 3. Defendants argue that "plaintiff's version of events is not credible on its face," Defs.' MSJ 12, but "credibility assessments, choices between conflicting versions of events, and the weighing of evidence are matters for the jury." *McClellan*, 439 F.3d at 144. And a jury crediting plaintiff's statement that he committed no traffic violations could conclude that Officer Comito witnessed no violation, and that he therefore lacked an objectively reasonable basis to believe that the traffic stop was lawful.

As a result, Officer Comito is not entitled to qualified immunity on plaintiff's unlawful-seizure claim at the summary judgment stage.

### C. Plaintiff May Be Entitled to Nominal Damages Even if the Alleged Unlawful Seizure Was Not a Proximate Cause of Any Actual Injuries.

Officer Comito is not entitled to summary judgment on plaintiff's unlawful seizure claim on the theory that "the pulling over of the vehicle itself" was "not a proximate cause of any of plaintiff's alleged injuries." Defs.' MSJ 10. Even if the alleged unlawful seizure was not a proximate cause of any injuries that plaintiff has alleged, plaintiff may still be entitled to nominal damages. *See Atkins v. New York City*, 143 F.3d 100, 103 (2d Cir. 1998) (explaining that Section 1983 plaintiffs are "entitled to nominal damages . . . in the absence of proof of actual injury"). It would therefore be inappropriate to dismiss plaintiff's unlawful-seizure claim against Officer Comito based on an asserted failure to set forth evidence of actual damages.

10

## II. Summary Judgment Is Granted on Plaintiff's Excessive-Force Claims.

Defendants are entitled to summary judgment on plaintiff's claim that Officer Comito used excessive force by (i) "affix[ing] metal handcuffs to his wrists in an excessively tight fashion, despite" plaintiff's complaints "of a prior injury to his left wrist and arm," SAC ¶ 22, and (ii) "violently str[iking] and shov[ing]" plaintiff, *id.* ¶ 20.[2] First, plaintiff has not put forward evidence from which a reasonable jury could find that officers used excessive force in handcuffing plaintiff. Second, qualified immunity shields Officer Comito from liability on plaintiff's excessive-force claim premised on the only striking or shoving as to which plaintiff adduces evidence—namely, Officer Comito's lightly pushing plaintiff's head while placing him in a patrol car.

### A. There Is No Genuine Dispute That Officer Comito's Use of Force in Handcuffing Plaintiff Was Reasonable.

Whether officers used excessive force in violation of the Fourth Amendment depends on whether their use of force was "'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (quoting *Scott v. United States*, 436 U.S. 128, 137–39 (1978)). When a plaintiff claims excessive force in an officer's use of handcuffs, courts look to "whether an officer reasonably should have known during handcuffing that his use of force was excessive." *Cugini v. City of New York*, 941 F.3d 604, 613 (2d Cir. 2019). In conducting that inquiry, courts consider "if either the unreasonableness of the force used was

---

[2] Though plaintiff's complaint alleges that Officer Trotta herself used excessive force against him, *see* SAC ¶¶ 20, 22, his summary judgment brief clarifies that Officer Trotta should be liable only for "fail[ing] to intervene to prevent the excessive force against" him, Pl.'s Opp'n 18. In addition, his summary judgment brief fails to respond to defendants' argument that Officer Trotta was not directly involved in the alleged use of excessive force. *See id.* at 14–18. Plaintiff has therefore abandoned any claim that Officer Trotta directly used excessive force against him. *See Dynamic Concepts, Inc. v. Tri-State Surgical Supply & Equip. Ltd.*, 716 F. App'x 5, 14 (2d Cir. 2017) ("Where a partial response to a motion [for summary judgment] is made—*i.e.*, referencing some claims or defenses but not others . . . in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." (alteration and omission in original) (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 197–98 (2d Cir. 2014)).

apparent under the circumstances, or the plaintiff signaled her distress, verbally or otherwise, such that a reasonable officer would have been aware of her pain, or both." *Ibid.*

Plaintiff has not adduced evidence from which a jury could find that Officer Comito should reasonably have known that his use of force in handcuffing plaintiff was excessive. The only evidence plaintiff cites in support of his allegation that Officer Comito's use of force was unreasonable is his testimony at the administrative hearing—specifically his statement that while he was standing "[o]utside where [he] got pulled over," he told officers that the handcuffs were aggravating a prior injury. *See* 50-h Hearing Tr. 42:10–25. But the audio portion of the dash-camera footage, which captures the duration of the traffic stop, contradicts plaintiff's testimony. Though plaintiff is audible throughout the footage, he does not make any complaints about the handcuffs whatsoever, *see generally* Dash-Camera Footage, let alone during the period where he is standing outside by where he was pulled over, *see id.*, pt. 1, 21:20–22:00. Because plaintiff's account "is blatantly contradicted by the record, so that no reasonable jury could believe it," I decline to "adopt [his] version of the facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

To be sure, "a plaintiff asserting a claim for excessive force need not always establish that she alerted an officer to the fact that her handcuffs were too tight or causing pain." *Cugini*, 941 F.3d at 613. Rather, "[t]he question is more broadly whether an officer reasonably should have known during handcuffing that his use of force was excessive." *Ibid.* Plaintiff, however, points to no other evidence suggesting that Officer Comito should have been aware that the handcuffs were too tight. Instead, he relies solely on his testimony at the administrative hearing, *see* Pl.'s Opp'n 14, which is contradicted by the video evidence. Plaintiff has therefore failed to establish a genuine dispute over whether Officer Comito's use of force in handcuffing him was unreasonable

under the circumstances. Officer Comito is therefore entitled to summary judgment on this excessive-force claim. *See Matsushita Elec. Indus.*, 475 U.S. at 587.

### B. Qualified Immunity Shields Officer Comito from Liability on Plaintiff's Remaining Excessive-Force Claim.

Officer Comito is entitled to qualified immunity on plaintiff's claim that Officer Comito otherwise used excessive force against him. Plaintiff alleges in his complaint that Officer Comito "violently struck and shoved" him. SAC ¶ 20. But the only evidence in the record supporting a claim of striking or shoving is plaintiff's testimony that, while he was handcuffed, Officer Comito placed him into the police car at an awkward angle, 50-h Hearing Tr. 45–48. Plaintiff acknowledges that Officer Comito only "light[ly] push[ed]" plaintiff's head when placing him into the car. *Id.* at 47:16. Because that use of force does not violate clearly established law, Officer Comito is entitled to qualified immunity on plaintiff's excessive-force claim.

Qualified immunity attaches "when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White*, 580 U.S. at 78–79 (per curiam) (quotation marks and citation omitted). To overcome qualified immunity, "[t]he contours of the right must be sufficiently clear" at the time of the violation "that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Because "[u]se of excessive force is an area of the law in which the result depends very much on the facts of each case, . . . officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam) (quotation marks and citation omitted).

Before plaintiff's encounter with Officer Comito in March 2019, "it was clearly established in this Circuit that it is a Fourth Amendment violation for a police officer to use significant force against an arrestee who is no longer resisting and poses no threat to the safety of officers others."

13

*Jones v. Treubig*, 963 F.3d 214, 225 (2d Cir. 2020) (citing *Tracy*, 623 F.3d at 98–99). Nonetheless, the parties point to no precedent that would have informed Officer Comito that lightly pushing plaintiff's head while placing him into a patrol car violated plaintiff's Fourth Amendment rights. To the contrary, existing precedent indicates that that "kind of *de minimis* physical contact common to virtually every custodial arrest" is not unreasonable under the Fourth Amendment. *Figueroa v. Mazza*, 825 F.3d 89, 105–06 (2d Cir. 2016) (holding that officers' "application of light force" by "push[ing]" a suspect who "stiffen[ed] his legs" into a police car did not constitute excessive force).

Plaintiff's citation to the Second Circuit's recent decision in *Ketcham v. City of Mount Vernon*, 992 F.3d 144 (2d Cir. 2021), is unavailing. For starters, *Ketcham* was decided in 2021 and therefore could not have clearly established any law at the time of plaintiff's encounter with Officer Comito in March 2019. *See Okin*, 577 F.3d at 433 ("[P]recedent existing at the time of the alleged violation . . . determine[s] whether the conduct violated a clearly established right.") And in any event, *Ketcham* is far afield from this case. *Ketcham* held that slamming a restrained arrestee's head into a police car door constitutes "significant force" that violates an arrestee's clearly established Fourth Amendment rights. *Ketcham*, 992 F.3d at 151 (quoting *Lennox v. Miller*, 968 F.3d 150, 157 (2d Cir. 2020)). Plaintiff, however, alleges only that Officer Comito "light[ly] push[ed]" his head as he was placed into the patrol car. 50-h Hearing Tr. 47:16. And "police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela*, 138 S. Ct. at 1153 (quotation marks and citation omitted). The specific facts involving striking or shoving as to which plaintiff has adduced evidence here do not amount to a violation of clearly established law. Qualified immunity therefore shields Officer Comito from liability.

14

### III.     Summary Judgment Is Appropriate on Plaintiff's Failure-to-Intervene Claim.

Plaintiff alleges that Officer Trotta "failed to intervene" to prevent Officer Comito's use of excessive force against him. SAC ¶ 66.[3] Yet "[a] police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's clearly established statutory or constitutional rights of which a reasonable person would have known." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) (quotation marks and citation omitted). Because Officer Comito's alleged use of force did not violate any of plaintiff's clearly established rights, *see supra* pp. 11–14, Officer Trotta is entitled to summary judgment on plaintiff's corresponding failure-to-intervene claim.

### CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in part and denied in part. Defendants' motion for summary judgment on plaintiff's claims against Sergeant Jason McMunn and Officer Ashleigh Trotta is granted in full. Defendants' motion for summary judgment on plaintiff's claims against Officer Anthony Comito is denied as to the unlawful-seizure claim but granted as to plaintiff's excessive-force claims.

The Clerk of Court is respectfully directed to terminate Sergeant Jason McMunn and

---

[3] Plaintiff's complaint can also be read to allege that Officer Trotta failed to intervene to prevent the alleged unlawful seizure. *See* SAC ¶¶ 65–66 (alleging that "those [d]efendants that were present but did not actively participate in the aforementioned unlawful conduct . . . failed to intervene" and thereby "violated the Fourth and Fourteenth Amendments."). His summary judgment brief, however, asserts that only Officer Trotta should be liable for failing to intervene and only with respect to his claim that Officer Comito used excessive force against him. *See* Pl.'s Opp'n 16. Plaintiff has therefore abandoned any other potential failure-to-intervene claim. *See Dynamic Concepts, Inc.*, 716 F. App'x at 14.

Officer Ashleigh Trotta as defendants from this action.

  SO ORDERED.

               */s/ Rachel Kovner*
               RACHEL P. KOVNER
               United States District Judge

Dated: March 20, 2024
    Brooklyn, New York